The Honorable Billy Joe Purdom State Representative Route 1, Box 135B Yellville, Arkansas 72687-9605
Dear Representative Purdom:
This is in response to your request for an opinion on two questions relating to an existing emergency telephone service charge levied by Marion County. Your request indicates that voters of the county approved the imposition of a five percent (5%) emergency telephone service charge in 1992 but that "insurmountable problems" have prevented the implementation of the contemplated 911 telephone system and 911 public safety communications center. Your questions are:
 1. Can Marion County stop collection of the 9-1-1 tax and at a later date start collection again if the project becomes feasible?
 2. If the answer is yes, could the tax be restarted with a vote of the Quorum Court, or would it take a new vote of the people?
In my opinion, the county may, by ordinance of the quorum court, terminate the levy of its existing emergency telephone service charge and later impose a new emergency telephone service charge although, as explained in my answer to your second question, the county has no clear authority to suspend, and later lift the suspension of, collection of the existing charge.
The authority of a political subdivision to levy an emergency telephone service charge is set forth in the Arkansas Public Safety Communications Act of 1985, as amended, A.C.A. §§ 12-10-301 to -324 (1987, Cum. Supp. 1993, and as amended by Act 627 of 1995) (the "Act"), and, in particular, in A.C.A. § 12-10-318 (1987 and as amended by Act 627 of 1995). Although nothing in the Act contemplates the situation described in your request or expressly authorizes the termination of the levy of the charge in such circumstances, it is my opinion that a quorum court's passage of an ordinance to terminate its emergency telephone service charge is within its power to "exercise local legislative authority not denied by the Constitution or by law." Ark. Const. amend. 55, § 1(a).
In response to your second question, it is my opinion that, once the county's emergency telephone service charge has been terminated by ordinance of the quorum court, the county may not commence collection of a new charge without a new vote of its electors authorizing such charge.
The Act authorizes the governing body of a political subdivision to reduce the rate of its charge "[i]f the proceeds generated by an emergency telephone service charge exceed the amount of moneys necessary to fund the 911 telephone system and 911 public safety communications center. . . ." A.C.A. § 12-10-319(a)(1). The Act provides that, as an alternative, the governing body may suspend the charge "if the revenue generated therefrom exceeds the necessary funding level." A.C.A. §12-10-319(a)(2). The Act also provides that the governing body may, by ordinance, thereafter increase the rate or lift the suspension of the charge if revenues from the charge are less than the amount necessary for adequate funding. A.C.A. § 12-10-319(b)(1). Clearly, the governing body may take such action without an additional vote of the people.
Although it might be argued in this case that the county meets the criterion set forth in A.C.A. § 12-10-319(a)(2) for suspension of the charge (i.e., since the "necessary funding level" is zero, revenues are necessarily in excess thereof), it is my opinion that A.C.A. §12-10-319(a)(2), expressly being a procedure provided as an alternative to that set forth in A.C.A. § 12-10-319(a)(1), must be read together and in harmony with A.C.A. § 12-10-319(a)(1), which makes the operation of a 911 system and center a precondition to the exercise of the statutory authority to reduce the level of the service charge.
The express inclusion of one thing in a statute may fairly be interpreted to constitute the exclusion of another. Gazaway v. Greene CountyEqualization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993). Here, the General Assembly provided for the suspension of the charge in one specified situation: if a 911 system and center are in operation and proceeds from the charge exceed the amounts necessary to fund the system and the center. Because it provided for the suspension of the charge in only that circumstance, it may fairly be inferred that the General Assembly did not intend to authorize political subdivisions to suspend the charge (and later lift the suspension without a vote of the electors) in other situations. It follows that a political subdivision that does not have a 911 system and center in operation likely may only terminate, not suspend, its emergency telephone service charge, and that the election requirement set forth in A.C.A. § 12-10-318(a)(1) will apply if the political subdivision later wishes to levy a new charge. A definitive answer to the question of the county's authority to suspend collection of the charge will, of course, require a judicial determination, and there may be facts present in any particular case that would cause a court to conclude that suspension would be permissible.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh